# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **MARCIA TROUTMAN on behalf of herself and all others similarly situated,**<br><br>                              **Plaintiff,**<br>**v.**<br><br>**CONAGRA BRANDS, INC.**<br><br>                              **Defendant.** | **CASE NO.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Marcia Troutman ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Conagra Brands, Inc. ("Conagra" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## **INTRODUCTION**

1.      This is a proposed class action on behalf of a New York class of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of Chef Boyardee canned pasta products ("Products").[1] Conagra sells these Products boldly claiming on their principal display panel that they contain "No Preservatives."



---

[1] Products include: Beef Ravioli, Italian Sausage Ravioli, Cheese Ravioli, Lasagna, Mini Beef Ravioli, and Beefaroni.

2.      Despite unequivocally and boldly claiming that the Product contains "No Preservatives," buried within the ingredient deck on the back of the label is the preservative citric acid. The inclusion of citric acid renders the statement "No Preservatives" false, misleading, and in violation of the laws pled herein.



3.      Defendant knows that consumers are willing to pay more for beverages that are labeled as preservative free because they perceive it to be a healthier alternative to similar products that contain preservatives. Indeed, Defendant advertises the Products with the intention that consumers rely on the representation made on the packaging that the Products have "No Preservatives."

4.      While reasonable consumers such as the Plaintiff wish to consume preservative free products, they do not have the specialized knowledge necessary to understand the functions and purpose of each ingredient in a product formulation, including the fact that citric acid functions as a preservative.

5.      By falsely labeling the Products as having "No Preservatives," Defendant has profited from consumers' preference for products that are perceived to be healthier by being preservative free.

6.      Throughout the applicable class period, Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to tens of thousands of unsuspecting consumers throughout New York.

7.      Plaintiff alleges Defendant's conduct is in breach of warranty, violates N.Y. Gen. Bus. Law § 349 et seq., N.Y. Gen. Bus. Law § 350 et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

8.      Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Troutman is a resident of New York, New York. Defendant Conagra is a Delaware corporation with its principal place of business in Chicago, Illinois. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

9.      Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant has received substantial compensation for affected transactions and business activity in this judicial district.

**PARTIES**

10.     Plaintiff Marcia Troutman is a resident of New York, New York.

11.     Ms. Troutman regularly purchased Beefaroni and Ravioli Products over the past 4 years from local stores including City Fresh.

12.     Ms. Troutman made each of her purchases after reading and relying on Defendant's Product labels.

13.     Ms. Troutman believed the representations on the Product labels that, among other things, they contained no preservatives.

14.     Ms. Troutman believed that Defendant lawfully marketed and sold the Product.

15.     Ms. Troutman relied on Defendant's labeling and was misled thereby.

16.     Ms. Troutman would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

17.     Ms. Troutman was injured in fact and lost money as a result of Defendant's improper conduct.

18.     Plaintiff and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was deceptive and/or misleading under New York laws and the Products are misbranded; therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

19.     Defendant Conagra Brands is a Delaware company headquartered in Chicago, Illinois. Conagra makes and sells products under various brand names that are available in supermarkets, restaurants, and food service establishments. Conagra owns more than 60 brands, among which is Chef Boyardee.

## GENERAL ALLEGATIONS

### A.    Citric Acid is a Preservative

20.    The federal Food Drug & Cosmetic Act  ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).  "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention." 21 C.F.R. §101.22(j).

21.    Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit oxidation and resulting rancidity; and (3) as a chelating agent which binds metal ions in certain foods to prevent oxidation.

22.    Citric acid is a preservative within the meaning of 21 C.F.R. §101.22. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration ("FDA") unequivocally identifies "citric acid" as a preservative.[2] The sentiment is echoed in the Substances Added to Food database maintained by the FDA, in which the principal technical

---

[2] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited October 2, 2023)

effects of citric acid are identified as preservative functions.[3] Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that citric acid was a preservative and needed to be identified as such. "The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid, but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[4]

23.     Citric acid's primary use is as a preservative, despite potentially having additional functions.[5] It functions as a preservative in the Products, regardless of Defendant's subjective purpose(s) for adding it to the Products, and regardless of any other functions citric acid may perform. This is even more the case here where Defendant has not declared a contrary purpose for adding citric acid.

_____

[3] The Substances Added to Food Database formerly Everything Added to Foods in the United States, available at https://www.cfsanappsexternal.fda.gov/scripts/fdcc/?set=FoodSubstances&sort=Sortterm_ID&order=ASC&startrow=1&type=basic&search=citric%20acid (last visited October 2, 2023)

[4] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited October 6, 2023).

[5] See https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/ (last visited October 6, 2023).

**B.        Consumer Demand For Preservative Free Products**

24.        The clean label movement has been called "the largest shift in American food habits since World War II."[6] The term encompasses many things but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[7]

25.        By representing the Products have "No Preservatives," Conagra seeks to capitalize on consumer preference for clean label products. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health."[8] "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, preservative free ranks "[a]mong the top claims… deem[ed] most important." *Id.*

26.        Indeed, Conagra has chosen to utilize its limited label space to promote three "free from" claims which are boldly placed at the top of each can and reaffirmed in advertisements – "No Artificial Colors, No Artificial Flavors, and No Preservatives."



---

[6] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited October 6, 2023).

[7] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited October 6, 2023).

[8] *See, Free-from Food Trends US 2015 Report,* MINTEL, Available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).



27.     In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated the most popular claim to be "no artificial ingredients" followed closely by a claim that a product contained  "no preservatives."[9]



Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

[9] https://www.lek.com/insights/ei/clean-label-food-ingredients  (last visited January 3, 2024).

28.     By failing to properly label its Products, Defendant has misled and deceived consumers in violation of the laws pled herein.

29.     As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

## ECONOMIC INJURY

30.     Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

31.     Plaintiff saw and relied on Defendant's misleading labeling of its Products.

32.     Plaintiff believed that the purchased Products contained no preservatives.

33.     Plaintiff believed that the Products were lawfully marketed and sold.

34.     In reliance on the claims made by Defendant regarding the qualities of their Products, Plaintiff paid a price premium.

35.     As a result of their reliance on Defendant's misrepresentations, Plaintiff received Products that contained ingredients which she reasonably believed they did not contain.

36.     Plaintiff received Products that were unlawfully marketed and sold.

37.     Plaintiff lost money and thereby suffered injury as she would not have purchased these Products and/or paid as much for them absent the misrepresentation.

38.     Defendant knows that the claim that the Products contain "No Preservatives" is material to a consumer's purchasing decision.

39.     Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Products she purchased, and/or in additional amounts attributable to the deception.

40.     By engaging in the false and deceptive conduct alleged herein, Defendant reaped, and continues to reap financial benefits in the form of sales and profits from their Products.

41.     Plaintiff, however, would be willing to purchase Products again in the future should she be able to rely on Defendant's marketing as truthful and non-deceptive.

## <u>CLASS ACTION ALLEGATIONS</u>

42.     Plaintiff brings this action on behalf of herself and on behalf of classes of all others similarly situated consumers defined as follows:

      a.   **New York:** All persons in New York who purchased the Class Products in New York during the Class Period.

      b.   **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

43.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

44.     Excluded from the Class are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors, and assigns; and (ii) the judges to whom this action is assigned.

45.     Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

46.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

47.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

      a.   Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

      b.   Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

      c.    Whether Defendant participated in and pursued the common course of conduct complained of herein;

      d.   Whether Defendant's actions violate the N.Y. Gen. Bus. Laws §§

349, et seq.;

e.   Whether Defendant's actions violate N.Y. Gen. Bus. Laws §§ 350 et

seq.;

f.   Whether Defendant has been unjustly enriched as a result of its

unlawful business practices;

g.   Whether Defendant's actions constitute breach of express warranty;

h.   Whether Defendant should be enjoined from continuing the above-

described practices;

i.   Whether Plaintiff and members of the Class are entitled to

declaratory relief; and

j.   Whether Defendant should be required to make restitution, disgorge

profits, reimburse losses, and pay damages as a result of the above-

described practices.

48.     Plaintiff's claims are typical of the claims of the Class, in that Plaintiff is a

consumer who purchased Defendant's Product. Plaintiff is no different in any relevant respect

from any other Class member who purchased the Product, and the relief sought is common to the

Class.

49.     Plaintiff is an adequate representative of the Class because her interests do not

conflict with the interests of the members of the Class she seeks to represent, and she has

retained counsel competent and experienced in conducting complex class action litigation.

Plaintiff and her counsel will adequately protect the interests of the Class.

50.     A class action is superior to other available means for the fair and efficient

adjudication of this dispute. The damages suffered by each individual Class member likely will

be relatively small, especially given the cost of the Products at issue and the burden and expense

of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it

would be virtually impossible for members of the Class individually to effectively redress the

wrongs done to them. Moreover, even if members of the Class could afford individual actions, it

would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

51.     In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

52.     The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Breach of Express Warranty**

53.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

54.     Plaintiff's express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

55.     Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased contained no added preservatives.

56.     The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

57.     Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

58.     Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

59.     Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

60.     Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

<u>**SECOND CAUSE OF ACTION**</u>
**Violation of N.Y. Gen. Bus. Law §§ 349, *et seq.***

61.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

62.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state ..."

63.     Defendant's labeling and marketing of the Product, as alleged herein, constitutes "deceptive" acts and practices within the meaning of GBL § 349.

64.     Plaintiff and Class Members have been injured because they paid for and/or paid a premium for a Product that did not have the characteristics marketed, including that contrary to its label, it was not devoid of preservatives.

65.     GBL § 349(h) provides in relevant part that "any person who has been injured by reason of any violation of [GBL § 349] may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

66.     In accordance with § 349(h), Plaintiff seeks an order enjoining Defendant from continuing the unlawful deceptive acts and practices set forth above.

67.     Absent a Court order enjoining the unlawful deceptive acts and practices, Defendant will continue its false and misleading marketing campaign and, in doing so, irreparably harm each member of the Class.

68.     As a consequence of Defendant's deceptive acts and practices, Plaintiff Troutman and other members of the Class suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff and other members of the Class seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 349(h).

**THIRD CAUSE OF ACTION**
**Violation of N.Y. Gen. Bus. Law §§ 350, *et seq.***

69.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

70.     N.Y. Gen. Bus. Law § 350 declares false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state to be unlawful. The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading

in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual. 91. N.Y. Gen. Bus. Law § 350-a(l).

71.    Defendant's labeling and advertisements contain untrue and materially misleading statements regarding the contents of the Supplement.

72.    Plaintiff and members of the Class have been injured because they relied upon the labeling and advertising and paid a premium for a product that did not conform to its representations. Accordingly, Plaintiff and Class members received less than what they bargained and/or for which they paid a premium.

73.    Defendant's advertising and product labeling induced the Plaintiff and Class members to buy their Product.

74.    Defendant knew, or by exercising reasonable care should have known, that its statements and representations as described in this Complaint were untrue and/or misleading.

75.    Defendant made the material misrepresentations described in this Complaint on its Product labels.

76.    As a result of Defendant's false or misleading labeling and advertising, Plaintiff and Class members are entitled to monetary damages, statutory damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

77.    As a direct and proximate result of Defendant's violation of New York General Business Law §350, Plaintiff and the other members of the Class have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff and other members of the

Class also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e.

## NINTH CAUSE OF ACTION
### Restitution Based On Quasi-Contract/Unjust Enrichment

78.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

79.     Plaintiff pleads this cause of action in the alternative.

80.     Defendant's conduct in enticing Plaintiff and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

81.      Defendant took monies from Plaintiff and the Class for these Products and have been unjustly enriched at the expense of Plaintiff and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.  It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

82.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.      An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.      Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.      Compensatory damages for Causes of Action for which they are available.

D.      Statutory penalties for Causes of Action for which they are available.

E.      Punitive Damages for Causes of Action for which they are available.

F.      A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.      An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.      Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: January 24, 2024                    Respectfully submitted,


Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile:  (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*